**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PATRICK PIZZELLA,[1] Acting Secretary of
Labor, United States Department of Labor,

                            Plaintiff,

                                     5:17-cv-00561 (BKS/ATB)

v.

LIBERTY GAS STATION AND
CONVENIENCE STORE, LLC, LIBERTY
PIZZA & CONVENIENCE, INC.,
HUSEYIN TURAN, Individually and as
Owner,

                           Defendants.

---

**Appearances:**

*For Plaintiff:*
Kate S. O'Scannlain
Solicitor of Labor
Jeffrey S. Rogoff
Regional Solicitor
Alexander M. Kondo
Amy Tai
Trial Attorneys
U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014

*For Defendants Liberty Gas Station and
Convenience Store, LLC and Huseyin Turan:*
Anas Saleh
404 Oak Street, Suite 288
Syracuse, NY 13203

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Secretary of Labor Patrick Pizzella is automatically substituted as the plaintiff in this action.

*For Defendant Liberty Pizza & Convenience, Inc.:*
Lauren Marie Monforte
Monforte Law Office
120 East Washington Street, Suite 943
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Patrick Pizzella, Acting Secretary of Labor, United States Department of Labor,

brings this action, (Dkt. No. 1), under Sections 16(c) and 17 of the Fair Labor Standards Act (the

"Act"), 29 U.S.C. §§ 201 et. seq. Plaintiff alleges that Defendants Huseyin Turan, Liberty Gas

Station and Convenience Store, LLC ("Liberty Gas"), and Liberty Pizza & Convenience, Inc.

("Liberty Pizza"), violated sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, 29 U.S.C.

§§ 206, 207, 211, 215, by failing to adequately keep records and pay their employees the

prevailing federal minimum wage and overtime, (Dkt. No. 1, ¶¶ 50–56). Currently before the

Court is Plaintiff's motion for spoliation sanctions. (Dkt. Nos. 41, 57).[2] Defendants Turan and

Liberty Gas oppose the motion. (Dkt. No. 52). Defendant Liberty Pizza did not respond to the

motion. For the reasons that follow, Plaintiff's motion is granted in part.

## II.     FACTS

### A.      Allegations in the Complaint

In 2016, the Department of Labor initiated an investigation into the labor and

employment practices of Liberty Pizza, a pizzeria and convenience store located in Jamesville,

New York, and Liberty Gas, a gas station, pizzeria, and convenience store in North Syracuse,

---

[2] On January 28, 2019, Plaintiff filed a corrected memorandum of law in support of its motion to clarify that the "original" timecards to which the motion refers are photographs of the original timecards. (Dkt. Nos. 55, 57). The Court, having granted Plaintiff's request to file the corrected memorandum of law, (Dkt. No. 56), refers to that document throughout this opinion.

New York. (Dkt. No. 1, ¶ 7, 36). Plaintiff alleges that Defendant Turan was the joint owner and manager of both entities, (*id.*), which shared employees, maintained "common and centralized . . . management and ownership," and "operated as a single integrated enterprise," (*id.* ¶¶ 13–21). Plaintiff alleges that Defendants' "employees regularly worked in excess of 50 hours in many workweeks, sometimes working as many as 70 hours in a single week." (*Id.* ¶ 24). Defendants, however, "typically did not pay employees a premium of one and one-half times the employees' regular rates for hours worked . . . in excess of 40 [hours] in a workweek." (*Id.* ¶ 26).

Plaintiff alleges that, to avoid paying their employees overtime, Defendants "concocted [a] scheme" "to simulate compliance with the overtime requirements of the Act." (*Id.* ¶ 27). Prior to July 2016, "Defendants' employees recorded their hours on time cards that were punched by a time clock machine." (*Id.* ¶ 36). "Defendants aggregated the total number of hours employees worked at one or both of" Defendants' locations. (*Id.* ¶ 28). "Defendants then issued employees checks at a regular, hourly rate for a portion of their hours worked." (*Id.* ¶ 29). "These checks typically—and falsely—reflected that employees worked fewer than 40 hours each week." (*Id.*). "Defendants then paid employees cash at a straight time rate for their remaining hours," which did not appear on Defendants' payroll records. (*Id.* ¶¶ 31–32).

Furthermore, Plaintiff alleges that "[d]uring the [Department of Labor's] investigation" in 2016, "Defendants removed the time cards and time clock machine from the worksites." (*Id.* ¶ 37). Instead, Defendants "manually record[ed] their hours worked on paper time sheets stored in a binder." (*Id.* ¶ 38). Defendants also "began issuing employees separate checks for work performed at the . . . Defendants' two different locations." (*Id.* ¶ 35). "At the end of each workweek, Defendants . . . presented each employee with a check and a schedule purporting to show the hours for which the check was compensation." (*Id.* ¶ 39). Even though the "hours on

the schedules typically understated the total number of hours actually worked by employees,"
(*id.* ¶ 40), "in order to receive their checks, Defendants required employees to sign the document
containing the fictional number of hours worked," (*id.* ¶ 41). "Defendants continued to pay
employees cash, straight-time payments for . . . hours over 40." (*Id.* ¶ 43).  Plaintiff initiated this
action on May 22, 2017. (Dkt. No. 1).

> B.      **Evidence Submitted in Support of the Motion for Sanctions[3]**

On November 9, 2017, Plaintiff served Defendants with interrogatories, (Dkt. Nos. 41-3,
-4), and requests for documents, "including but not limited to timecards, timekeeping records,
and schedules provided to employees with their checks." (Dkt. No. 41-5, at 7; Dkt. No. 41-6, at
6). Defendants' interrogatory responses indicated that "Liberty Pizza has used a sign-in/sign out
system at all relevant times," while Liberty Gas "used a timecard system from approximately
2014–2015, a sign-in/sign-out system from approximately 2015–2016, and a timecard system
beginning in 2017." (Dkt. No. 41-7, at 10). In their December 18, 2017 document production,
however, Defendants did not produce any daily time records for Liberty Pizza and produced only
a limited set of daily timecards for Liberty Gas covering the period from March 2017 through
part of October 2017. (Dkt. No. 41-2, ¶ 7). Instead, Defendants produced handwritten weekly
schedules of employee hours. (*Id.* ¶ 8).

Defendants have provided no explanation for their failure to produce the daily time
records. Victoriya Kononchuk, Defendants' manager, testified that she  maintained the time
records for Liberty Pizza  on-site, in a filing cabinet, and that she saw the "punch cards" at
Liberty Gas during the course of her employment. (Dkt. No. 41-15, at 6–7). She stated that, at

---

[3] Other than objecting to the "overall theme" of Plaintiff's motion and denying that Defendants "destroyed any evidence at all," (Dkt. No. 52-1, at 2), Defendants Turan and Liberty Gas generally do not dispute the factual content of Plaintiff's motion and its attached exhibits.

the time Defendant Turan sold the stores in 2018, there were daily time records covering a period of two to three years stored at Liberty Pizza and more than one year of daily time records stored at Liberty Gas. (*Id.*). In July 2018, Defendant Turan testified at his deposition that he had not searched for any daily timecards or sign-in/sign-out sheets from Liberty Pizza; he testified that when he "sold the store, [he] took all the cases out of it, [and] put it in the storage. If you want, I can go look for it what I can find." (Dkt. No. 41-13, at 14). In an August 7, 2018 letter, Defendant Turan's counsel informed Plaintiff that Defendants had in their possession "no more time cards" from Liberty Gas and "no more sign in/sign out records" from Liberty Pizza. (Dkt. No. 41-14, at 2). On September 18, 2018, defense counsel further informed Plaintiff that his "clients destroyed no records after the time they were requested. We have forwarded everything we have." (Dkt. No. 41-17, at 2).

Plaintiff has provided information from the Department of Labor investigation which corroborates the existence of the timecards that were never produced. On July 5, 2016, Wage and Hour Investigator James Hastings conducted an unannounced visit to Liberty Gas. (Dkt. No. 41-2, at 3-4). During his visit Investigator Hastings saw timecards for the week of July 4, 2016 posted on the wall and photographed the timecards. (Dkt. Nos. 41-2, at 4; 41-18). Defendants never produced these timecards. (Dkt. No. 41-2, at 4). During its investigation, the Department of Labor independently obtained photographs of timecards for employee Jeffrey Fox for certain weeks in 2014, 2015 and 2016. (Dkt. Nos. 41-2, at 4; 41-19). Defendants never produced these timecards. (Dkt. No. 41-2, at 4). The timecards that Plaintiff has obtained show significantly more hours worked than the weekly pay records produced by Defendants. (*See* Dkt. No. 57, at 11–13).

## III.    LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A party seeking sanctions based on spoliation must establish, by a preponderance of the evidence: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)). A district court has authority to "impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002). The "choice of an appropriate remedy for spoliation 'is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis.'" *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

## IV.    DISCUSSION

Plaintiff requests "that the jury be instructed to draw an adverse inference from Defendants' destruction of the daily time records" and seeks "an order precluding Defendants from introducing evidence regarding their unreliable weekly . . . records." (Dkt. No. 57, at 16).

### A.    Duty to Preserve the Evidence

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to

6

future litigation." *Fujitsu*, 247 F.3d at 436. A party has notice that the evidence is relevant to

litigation "most commonly when suit has already been filed, providing the party responsible for

the destruction with express notice." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.

1998). The scope of the duty "extend[s] to any documents . . . made by individuals 'likely to

have discoverable information that the disclosing party may use to support its claims or

defenses.' . . . The duty also extends to information that is relevant to the claims or defenses of

*any* party, or which is 'relevant to the subject matter involved in the action.'" *Zubulake v. UBS

Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003) ("*Zubulake IV*") (quoting Fed. R. Civ.

P. 26).

Here, Defendants had notice that the daily time records were relevant on May 22, 2017

when Plaintiff's filed and served the Complaint. The Complaint expressly alleges discrepancies

in the number of hours recorded on the daily time records and on the weekly schedules, (Dkt.

No. 1, ¶¶ 36–40), thus giving Defendants "notice that the evidence [was] relevant to litigation,"

*Fujitsu*, 247 F.3d at 436. Defendants received explicit notice when Plaintiff requested these

documents in November 2017. (Dkt. No. 41-5, at 7; Dkt. No. 41-6, at 6). Furthermore, it is

undisputed that many daily time records from both Liberty Gas and Liberty Pizza existed and

were under Defendants' control well after Plaintiff commenced this litigation. The Department

of Labor investigation documented the existence of daily time records in July 2016, (Dkt. Nos.

41-18, -19), and Defendants' interrogatories acknowledge that they created such records

throughout the relevant time period, (Dkt. No. 41-7, at 10). Kononchuk testified that she last saw

the daily time records at Liberty Gas and Liberty Pizza in early 2018 before the stores were sold

in March and June of that year. (Dkt. No. 41-15, at 6–7). Defendants have not disputed this

evidence or denied their obligation here. Accordingly, the Court finds Plaintiff has established

that Defendants had an obligation to preserve the daily time records at issue.

### B.     Culpability

A party may establish a culpable state of mind by "showing that the evidence was

destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'"

*Residential Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie v. Town of Cromwell,* 243 F.3d 93,

109 (2d Cir. 2001). "Once the duty to preserve attaches, any destruction of documents is, at a

minimum, negligent." *Zubulake IV*, 220 F.R.D. at 220 (footnote omitted). *See also Pension*

*Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 464

(S.D.N.Y. 2010) (stating that "a failure to preserve evidence resulting in the loss or destruction

of relevant information is surely negligent, and, depending on the circumstances, may be grossly

negligent or willful"), *abrogated on other grounds by Chin v. Port Auth. of N.Y & N.J.*, 685 F.3d

135 (2d Cir. 2012).

Defendants have provided no explanation for their failure to produce the daily time

records that existed until at least Defendant Turan sold the stores in 2018. Defendants Liberty

Gas and Turan argue that there is no evidence that the records were "destroyed," and suggest that

a "plausible explanation" for the missing records is that the Plaintiff has them because Plaintiff

acknowledges having "a few" timecards, and Kononchuk testified that when the Labor Board

came for the first time "they took some." (Dkt. No. 52-1, at 3-4).[4] Plaintiff notes, however, that

according to Kononchuk's deposition testimony, "up to three years of daily time records existed"

"as recently as March 2018 and June 2018." (Dkt. No. 53, at 2). Defendants have not provided

---

[4] According to the Plaintiff, the Department of Labor obtained photographs, not originals, of timecards posted on the wall at Liberty Gas during an unannounced visit on July 5, 2016, and photographs of several timecards for one employee.  (Dkt. No. 41-2, at 3-4).

any record evidence to the contrary, and no plausible explanation for why these records no longer existed in August 2018.

Plaintiff argues that Defendants' conduct in destroying or failing to produce the daily time records was either "knowing" or "plainly show[s] at least gross negligence." (Dkt. No. 57, at 10).[5] Plaintiff cites to Defendant Turan's testimony in July 2018 that he had moved the records from Liberty Pizza into storage in June 2018; that some of the Liberty Pizza daily time records from 2014 to 2017 "will still exist probably;" but that he had not looked for the requested daily time records. (Dkt. No. 41-13, at 14). Defendants have since represented that no additional daily time records are in their possession. (Dkt. No. 41-14, at 2). Significantly, Defendants have provided no explanation for what happened to those records after the time Plaintiff filed the Complaint, stating only that they "destroyed no records *after the time they were requested.*" (Dkt. No. 41-17, at 2 (emphasis added)). The Court therefore concludes that Plaintiff has established that Defendants acted with a culpable state of mind. At the very least, Defendants were grossly negligent in failing to preserve or produce the daily time records central to this case. *See Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507–08 (S.D.N.Y. 2013) (finding gross negligence where the plaintiff did not issue a litigation hold until fifteen months after sending its notice of claim to the defendants, and then took another six months to notify its IT vendor of its duty to preserve documents); *Zubulake IV*, 220 F.R.D. at 220 (holding that destruction of evidence was "grossly negligent, if not reckless" where the defendant "failed to include [evidence from a key employee] in its preservation directive").

---

[5] Gross negligence is "a failure to exercise even that care which a careless person would use." *Pension Comm.*, 685 F. Supp. 2d at 464 (citing Prosser & Keeton on Torts § 34). Gross negligence "differs from ordinary negligence only in degree, not in kind." *Id.* (citing Prosser & Keeton on Torts § 34). Willfulness "requires 'that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.'" *Id.* (quoting Prosser & Keeton on Torts § 34).

9

## C.       Relevance

Finally, a party seeking sanctions for spoliation must demonstrate that the destroyed

evidence was "relevant" to its claims or defenses. At least where more severe sanctions are at

issue, "relevance . . . means something more than being sufficiently probative to satisfy Rule 401

of the Federal Rules of Evidence." *Residential Funding Corp.*, 306 F.3d at 108–09. "Rather, the

party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier

of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature

alleged by the party affected by its destruction.'" *Id.* at 109 (quoting *Kronisch*, 150 F.3d at 127).

Furthermore:

> It is not enough for the innocent party to show that the destroyed
> evidence would have been responsive to a document request. The
> innocent party must also show that the evidence would have been
> helpful in proving its claims or defenses—*i.e.*, that the innocent
> party is prejudiced without that evidence. Proof of relevance does
> not necessarily equal proof of prejudice.

*Pension Comm.*, 685 F. Supp. 2d at 467; *see also Byrnie.*, 243 F. 3d at 108 ("The burden falls on

the 'prejudiced party' to produce 'some evidence suggesting that a document or documents

relevant to substantiating his claim would have been included among the destroyed

files.'"(quoting *Kronisch*, 150 F.3d at 127)); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422,

431 (S.D.N.Y. 2004) ("*Zubulake V*") ("In the context of a request for an adverse inference

instruction, the concept of 'relevance' encompasses not only the ordinary meaning of the term,

but also that the destroyed evidence would have been favorable to the movant.").

Here, Plaintiff's claims hinge on the degree to which he can prove that Defendants failed

to pay their employees overtime for every hour worked over 40 hours per week. Plaintiff

contends that the daily time records reflect the hours that employees *actually* worked, while the

weekly schedules Defendants produced significantly underreport employee hours to minimize or

eliminate the appearance that any given employee worked more than 40 hours. A comparison of

the timecards obtained during the Department of Labor investigation with the weekly schedules

substantiates Plaintiff's argument. For example, the weekly schedules Defendants produced

indicate that five employees worked a total of 17.5 hours at Liberty Gas on July 4, 2016. (*See*

Dkt. No. 57, at 12). The daily timecards, on the other hand, indicate that those five employees

worked more than 41.5 hours that day. (Dkt. No. 41-18, at 3–7; *see also* Dkt. No. 57, at 12). A

similar comparison of the timecards and weekly pay records of one employee demonstrates an

undercount of approximately 42 hours during the week of September 29, 2014, (*compare* Dkt.

No. 41-19, at 4 *with* Dkt. No. 41-12, at 4), and 45 hours during the week of August 3, 2015,

(*compare* Dkt. No. 41-19, at 6 *with* Dkt. No. 41-12, at 5). Defendant Turan testified that the

weekly schedules Defendants produced "accurately reflect the actual hours that the employees

worked," (Dkt. No. 41-13, at 192, 353, 356–57), and store manager Kononchuk testified that the

schedules were completed "based on the time cards," (Dkt. No. 41-15, at 8). The timecards,

however, demonstrate significantly more hours worked than the hours reported in the weekly

schedules. (*See* Dkt. No. 57, at 12–15; Dkt. No. 41-12, -18). It is fair to assume that additional

daily time records would reveal additional unreported hours. *See Chan v. Triple 8 Palace, Inc.*,

No. 03-cv-6048, 2005 WL 1925579, at *9, 2005 U.S. Dist. LEXIS 16520, at *25–26 (S.D.N.Y.

Aug. 11, 2005) (concluding that "it can be presumed that the missing tip distribution sheets

would reveal similar information" as "tip distribution sheets that were produced").

Defendants have not disputed the relevance of the daily time records. Because the

missing records would be "more than sufficiently probative" of Defendants' failure to pay

overtime, *Residential Funding*, 306 F.3d at 109, the Court concludes that Plaintiff has satisfied

his burden of showing that the daily time records that Defendants have destroyed or failed to

produce are relevant. *Cf. Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 179 (E.D.N.Y. 2009) (holding that the plaintiff did not establish relevance of destroyed emails when she produced "nothing, aside from speculation, as support for her claim that the destroyed emails would have" supported her case); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 123 (S.D.N.Y. 2008) (holding that the plaintiff failed to establish relevance where he was "unable to demonstrate that any single document, or even any type of document, that was destroyed would have been favorable to him"). The only remaining question is what specific sanction or combination of sanctions is most appropriate.

### D.      Choice of Sanctions

Plaintiff requests that the jury be instructed to draw an adverse inference from Defendants' destruction of or failure to produce the daily time records, because "the full set of daily time records would have provided exceptionally strong evidence that Defendants undercompensated their employees." (Dkt. No. 57, at 17–18). Furthermore, Plaintiff seeks an order precluding Defendants from introducing the weekly time records as evidence. (Dkt. No. 57, at 16).

Sanctions for spoliation of evidence should aim to accomplish three goals: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F.3d at 779 (quoting *Kronisch*, 150 F.3d at 126). "It is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy. The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)." *Dorchester*

*Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014) (quoting *Pension Comm*, 685 F. Supp. 2d at 469).

"[T]he Second Circuit has endorsed four factors for a district court to consider in exercising its discretion to impose sanctions pursuant to Rule 37: '(1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). A district court is free to consider "the full record in the case in order to select the appropriate sanction." *S. New England Tel. Co.*, 624 F.3d at 144 (citation omitted).

Here, Defendants have failed to submit any evidence in support of their opposition to the motion for sanctions and have failed to offer any plausible explanation for the missing daily time records. Plaintiff has established, at the very least, gross negligence. Although Defendants were not warned of the consequences of not producing these records, Defendants knew that the records were critical to Plaintiff's case. Because the missing timecards and sign-in/sign-out sheets were the only contemporaneously recorded records of the hours employees actually worked, Plaintiff is left without a reliable method of calculating the amount Defendants allegedly underpaid their employees. Instead, the only time records remaining are the weekly schedules created by Defendants. As shown by the daily timecards obtained during the Department of Labor's investigation, these schedules appear to be demonstrably inaccurate. Moreover, they are uniformly favorable to Defendants, significantly understating the number of hours employees actually worked in a given week. "As a result of [Defendants'] spoliation, the universe of . . .

evidence has contracted dramatically and now includes only the documents most favorable to

[Defendants] . . . . The prejudice to [Plaintiff] is thus extreme in two respects: the potential scope

of the evidence lost, and the pro-spoliator bias of the documents that remain. That prejudice can

be corrected only by a substantial sanction." *Dorchester Fin. Holdings Corp.*, 304 F.R.D. at 185.

An adverse inference instruction will deter further spoliation or non-disclosure of evidence,

while placing the risk of an erroneous judgment on the party that created the risk. *See West*, 167

F.3d at 779. The Court accordingly finds that an adverse inference instruction is warranted.

Plaintiff argues that an adverse inference instruction is not sufficient because the

"Defendants will still be able to rely on their falsified weekly pay records." (Dkt. No. 57, at 17).

Plaintiff thus also seeks an order precluding the admission of the Defendants' weekly pay

records. Defendants have not addressed the sanction factors beyond seeking the "least harsh

sanction that can provide an adequate remedy;" noting that the sanctions sought by Plaintiff's

would "severely prejudice" them; and.asserting, without any plausible contrary explanation, that

Plaintiff failed to establish that the records were destroyed. (Dkt. No. 52-1). On this record, it is

not clear what other evidence is available to the parties to establish the daily hours worked and

whether an adverse instruction to the jury could be crafted that would be sufficient. In light of the

Court's obligation to impose the least harsh remedy "commensurate with the non-compliance

such that [it] restore[s] the prejudiced party, as nearly as possible to the position it would have

occupied had the discovery been produced and the evidence disclosed," *Syntel Sterling Best*, 328

F.R.D. at 120 (quoting *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 220 (S.D.N.Y. 2013)), the

Court defers consideration of the exact language of the adverse inference instruction and whether

to preclude evidence of the weekly schedules until the time of trial. The parties may address this

issue in their pretrial submissions.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Clerk of the Court is directed to substitute the current Acting

Secretary of Labor, Patrick Pizzella, as the Plaintiff in this action, in accord with Fed. R. Civ. P.

25(d); and it is further

**ORDERED** that Plaintiff's motion for spoliation sanctions (Dkt. No. 41) is **GRANTED**

**in part,** in that the Court will issue an adverse inference charge to the jury. The Court defers a

determination regarding the exact language of the charge, and whether to also preclude the

Defendants' weekly pay records as a sanction for spoliation, to the time of trial.

   **IT IS SO ORDERED.**

Dated:  September 24, 2019
        Syracuse, New York


                                              Brenda K. Sannes
                                              U.S. District Judge