**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

EUGENE SCALIA[1], Secretary of Labor, United States
Department of Labor,

                                                                    5:17-cv-00561 (BKS/ATB)

                                        Plaintiff,

v.

LIBERTY GAS STATION AND CONVENIENCE
STORE, LLC, LIBERTY PIZZA & CONVENIENCE,
INC., and HUSEYIN TURAN, Individually,

                                        Defendants.

_____

**Appearances:**

_For Plaintiff:_
Kate S. O'Scannlain
Solicitor of Labor
Jeffrey S. Rogoff
Regional Solicitor
Amy Tai
Alexander M. Kondo
Trial Attorneys
U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014

_For Defendants Liberty Gas Station and Convenience Store, LLC and Huseyin Turan:_
Anas Saleh
404 Oak Street, Suite 288
Syracuse, NY 13203

_For Defendant Liberty Pizza & Convenience, Inc.:_
Lauren Marie Monforte
Monforte Law Office
120 East Washington Street, Suite 943
Syracuse, NY 13202

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Secretary of Labor Eugene Scalia is automatically substituted as the plaintiff in this action.

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.        INTRODUCTION

Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor ("the Secretary"), brings this action under Sections 16(c) and 17 of the Fair Labor Standards Act (the "Act," or "FLSA"), 29 U.S.C. §§ 201 et. seq. (Dkt. No. 1). The Secretary alleges that Defendants Huseyin Turan, Liberty Gas Station and Convenience Store, LLC ("Liberty Gas"), and Liberty Pizza & Convenience, Inc. ("Liberty Pizza") violated sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, U.S.C. §§ 206, 207, 211, 215, by failing to adequately keep records and pay their employees the prevailing federal minimum wage and overtime. (Dkt. No. 1, ¶¶ 50–56). Presently before the Court is the Secretary's motion for partial summary judgment, (Dkt. No. 78), which Defendants oppose. (Dkt. Nos. 81, 87). For the reasons that follow, the Secretary's motion is granted.

## II.       FACTS

### A.        Liberty Gas and Liberty Pizza

The relevant facts are undisputed. (Dkt. Nos. 78-2; 81-3, 87-2).[2] Liberty Gas is a "gas station, convenience store," and pizzeria, located in North Syracuse, New York. (Dkt. No. 78-9, at 11, 22). In addition to gasoline, pizza, and other food items, Liberty Gas also sells common convenience-store goods, such as lottery tickets and cigarettes. (*Id.* at 63). In 2017, Liberty Gas had gross annual sales of "[a] couple million dollars." (*Id.*; *see also* Dkt. No. 78-15, at 2 (reporting gross annual sales of $3.9 million in 2014)). Liberty Pizza "is a pizza shop with some

---

[2] Defendants admitted the facts in the Secretary's Statement of Material Facts, but dispute "the relevant time period," arguing that "some or all" of the Secretary's claims are barred by a two-year statute of limitations because Defendants did not willfully violate the FLSA. (Dkt. Nos. 81-3, 87-2). This suit, however, was filed on May 22, 2017, (Dkt. No. 1), and all of the alleged violations in the Secretary's partial motion for summary judgment took place in 2016 to 2017—clearly within the statute of limitations period alleged by Defendants. (*See* Dkt. No. 78-4).

2

convenience store" items, located in Jamesville, New York. (Dkt. No. 78-9, at 11, 23–24). In addition to pizza, Liberty Pizza "[s]ells beer, cigarette[s], and lottery" tickets and has seating for "about [forty] people." (*Id.* at 23). In 2017, Liberty Pizza had gross annual sales between $500,000 and $1 million. (*Id.* at 64; *see also* Dkt. No. 78-16, at 2 (reporting gross annual sales of $678,988 in 2014)).

Liberty Gas and Liberty Pizza are "two separate corporations" and file separate tax returns. (Dkt. No. 78-9, at 98; Dkt. No. 78-15; Dkt. No. 78-16). However, during the time period relevant to this dispute, both Liberty Gas and Liberty Pizza did business as "Liberty Pizza". (Dkt. No. 78-9, at 9–10). They also used the same logo, virtually identical websites, and the same email address. (*Id.* at 61–62; Dkt. Nos. 78-12, 78-13). Both businesses were sold, separately, in 2018 to new owners who are not parties to this action. (Dkt. No. 78-9, at 6–8).

### B.    Defendant Turan

#### 1.    Liberty Gas

Defendant Turan joined Liberty Gas when it opened in September 2010. (*Id.* at 11–12). From his start in 2010 until January 2017, Turan was the "manager" and "person in charge" at Liberty Gas. (*Id.* at 12). In this role, Turan hired and fired employees, determined employees' compensation, created employees' weekly schedules, granted time off, and managed the time-keeping process. (*Id.* at 13, 66, 71). Beyond employment matters, Turan also ordered inventory, arranged to have menus designed, and arranged to have a website designed for Liberty Gas. (*Id.* at 13, 54–57). Turan obtained a five-percent ownership interest in Liberty Gas in 2016. (Dkt. No. 78-8, at 8).

In January 2017, Turan "ceased day-to-day involvement with Liberty Gas" and "went to Liberty Pizza . . . [to] work there" instead. (*Id.* at 9; Dkt. No. 78-9, at 14). He "told [his]

uncle[3] . . . [he] cannot manage this place [anymore]" because of the issues that had arisen with the Department of Labor. (Dkt. No. 78-9, at 13–14). At that point, Turan was no longer the manager and was not involved "in the day-to-day operations of Liberty Gas." (Dkt. No. 78-9, at 17; Dkt. No. 78-8, at 9). When Turan made this transition, Hossein Rajabi took over as manager of Liberty Gas until December 2017. (Dkt. No. 78-9, at 14, 18; Dkt. No. 78-11, at 9). During this time, Rajabi still considered Turan to be his boss and sought Turan's approval before hiring or firing anyone. (Dkt. No. 78-11, at 9–11). According to Rajabi, throughout this entire time, Turan was "first" in the hierarchy; another manager, Victoriya Konochuck, was "second"; and Rajabi himself was "third." (*Id.* at 16). Additionally, Turan continued to determine employees' compensation and handled most scheduling. (*Id.* at 12, 15).

### 2.     Liberty Pizza

Turan was the "owner" and sole shareholder of Liberty Pizza until June 2018. (Dkt. No. 78-9 at 6, 27, 35–36; Dkt. No. 78-14, at 2). Prior to January 2017, Turan hired Jeffrey Fox "[a]s the person in charge" at Liberty Pizza. (Dkt. No. 78-9, at 26). Turan himself worked at Liberty Pizza only "sporadically, as a substitute for food service employees." (Dkt. No. 78-8, at 8). Additionally, Turan would "go in . . . maybe once a week" to collect money from the safe and "deposit [it] to the bank." (Dkt. No. 78-9, at 27–28). Despite this limited role, "[w]henever [Turan] was at one location, he was the boss." (Dkt. No. 78-10, at 23). He hired employees, took responsibility for compensation, and reviewed the business's bank account. (Dkt. No. 78-9, at 25–27, 88). Turan also set his own compensation at Liberty Pizza. (*Id.* at 29).

Upon his departure from Liberty Gas in January 2017, Turan became the person "in charge" at Liberty Pizza. (Dkt. No. 78-9, at 32). In this role, Turan "work[ed] daily at Liberty

---

[3] Turan's uncle was the owner of Liberty Gas. (Dkt. No. 78-9, at 12–13).

Pizza, where he supervise[d] employees, [was] responsible for hiring and firing, cook[ed], and perform[ed] other daily tasks as necessary." (Dkt. No. 78-8, at 8–9). In June 2018, Turan sold Liberty Pizza to Satar Mohammadi for $100,000. (Dkt. No. 78-9, at 6–7). As of the sale, Turan no longer received any profits from Liberty Pizza, but he remained responsible for the business's lease. (*Id.*).

### C.    Employment and Compensation Practices

#### 1.    Overtime Compensation

Liberty Gas and Liberty Pizza both employed staffs consisting generally of cashiers, cooks, and delivery drivers. (*See id.* at 30, 37–38, 82, 96–97). In some cases, the same employees worked at both businesses, even during the same week. (*Id.* at 38–39, 84–85, 96). This often occurred when one of the businesses was short-staffed. (*Id.* at 99). Though employees worked at different locations during the same week, they received "a paycheck from each separate store." (*Id.* at 40–41). Three examples follow.

During the week of September 5, 2016, Jeffrey Fox worked 36 hours at Liberty Gas and 19 hours at Liberty Pizza, for a total of 55 hours between both locations. (*Id.*; Dkt. No. 78-21, at 3; Dkt. No. 78-22, at 4). Fox did not receive any overtime pay for this work. (Dkt. No. 78-9, at 98). Instead, he was paid separately by each location at his regular rate of $10.00 per hour. (Dkt. No. 78-21, at 3, 5; Dkt. No. 78-22, at 4–5). The following week, Fox worked 31 hours at Liberty Gas and 21 hours at Liberty Pizza, for a weekly total of 52 hours. (Dkt. No. 78-9, at 98). Once again, Fox was not paid any overtime and instead received "one check from one store, another check from another store." (*Id.*). This pattern continued for most weeks between September 2016 and October 2017. (Dkt. No. 78-3, at 4–5; Dkt. No. 78-4, at 3–5).

During the week of September 5, 2016, Hossein Rajabi recorded 40 hours of work at Liberty Gas and another 36 hours at Liberty Pizza. (Dkt. No. 78-21, at 4; 78-22, at 4). For these

hours, Rajabi was paid separately by each location, at his regular rate of $13.00 per hour. (Dkt. No. 78-4, at 6; Dkt. No. 78-21, at 4; Dkt. No. 78-22, at 4). This practice occurred most weeks between August and October 2016, with Rajabi regularly working over 70 hours per week between both locations. (Dkt No. 78-4, at 6).

Finally, during the week ending April 2, 2017, Christopher Williams worked 26.5 hours at Liberty Gas and 25.5 hours at Liberty Pizza, for a weekly total of 52 hours between both locations. (Dkt. No. 78-4, at 7; Dkt. No. 78-9, at 109). Williams was not paid any overtime for this work. (Dkt. No. 78-9, at 109). This practice occurred for most weeks from March to July 2017. (Dkt. No. 78-4, at 7).

### 2.      Minimum Wage Compensation for Zarif Arif

In February 2016, Zarif Arif started work as a delivery driver for Liberty Gas. (Dkt. No. 78-3, at 3). On his first day, he worked for "six to eight hours" but "was beat up" during one of his deliveries. (Dkt. No. 78-9, at 1223; Dkt. No. 78-11, at 19). Arif went to the hospital "right from the [delivery] place." (Dkt. No. 78-9, at 122). Arif "did not get paid for that day" and "never returned to work." (*Id.* at 125–26). Turan has not seen Arif since the day of the incident. (*Id.* at 122).

### D.      Department of Labor Investigations

In October 2015, the Department of Labor's Wage and Hour Division ("WHD") began an investigation into Liberty Gas. (Dkt. No. 78-3, ¶ 6). At that time, "WHD found that Liberty Gas failed to pay overtime to Turan." (*Id.*). "Turan served as Liberty Gas's representative during the investigation, and the company agreed to come into compliance" with the FLSA's overtime requirements. (*Id.*). The documents provided by Liberty Gas to WHD during that investigation "did not, on their face, show that employees regularly worked over forty hours." (*Id.* ¶ 7).

In April 2016, WHD conducted a second investigation of Liberty Gas, which revealed that Liberty Gas and Liberty Pizza "shared employees, had common ownership and operational management, and that some of Liberty Gas's employees worked at Liberty Pizza . . . in the same workweek." (*Id.* ¶¶ 8–9). Accordingly, the investigation found that "Liberty Gas's employees regularly worked over forty hours per week without overtime compensation." (*Id.* ¶ 8).

Turan testified that in approximately 2015 or 2016, after the Department of Labor told Turn that he had to count an employee's combined work at Liberty Pizza and Liberty Gas in determining whether to pay the employee overtime, Turan contacted two acquaintances—one attorney and one bookkeeper—for advice on the issue. (Dkt. No. 78-9, at 45). At that time, Defendants' payroll company "didn't want to give [Defendants] any advice." (*Id.* at 48). Later, Defendants' payroll representative advised Turan that he "might be [required] to pay overtime." (*Id.* at 49). In "maybe a minute" phone conversation, the attorney said that he did not think Turan should have to pay overtime "[i]f it's two separate management and . . . you have two separate tax ID number[s]." (*Id.* at 47). Defendants did not seek any advice on their overtime obligations for employees who worked at both Liberty Gas and Liberty Pizza prior to the WHD investigations. (*Id.* at 42).

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1456 (2d Cir. 1995)).

IV.     DISCUSSION

The Secretary moves for summary judgment on six points: (1) Liberty Gas and Liberty Pizza are covered by the FLSA; (2) Turan is an employer of Liberty Gas and Liberty Pizza's employees; (3) Liberty Gas and Liberty Pizza are joint employers; (4) Defendants failed to pay statutorily required overtime to employees Jeffrey Fox, Hossein Rajabi, and Christopher Williams;[4] (5) Defendants failed to pay a statutorily required minimum wage to Zarif Arif; and (6) the Secretary is entitled to liquidated damages. (Dkt. No. 78-1, at 5). The Court will address each of these points in turn.

### A.     Liberty Gas & Liberty Pizza are Covered by the FLSA

The Secretary contends—and Defendants do not dispute—that Liberty Gas and Liberty Pizza are covered by the FLSA.[5] The FLSA applies to "enterprise[s] engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1). To be covered under this provision, a business must meet two criteria: (1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) it has "annual gross volume of sales . . . not less than $500,000." § 203(s)(1)(A). The first prong "is rarely difficult to establish" given its breadth. *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009); *Boekemeier v. Fourth Universalist Soc'y in the City of N.Y.*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000) ("Enterprise coverage has been interpreted

---

[4] The Secretary has not sought summary judgment for overtime wages owed to Defendants' other employees. (Dkt. No. 78-1, at 7). The Secretary notes that, with the exception of the violations that are the subject of this motion, "the parties dispute the number of hours that employees worked . . . and whether Defendants willfully violated the FLSA." (*Id.*).

[5] Defendant Liberty Pizza does not address this point directly but instead "joins in and relies upon the arguments made [by Defendants Liberty Gas and Turan]." (*See* Dkt. No. 81-2, at 2). Defendants Liberty Gas and Turan "rest on the record with respect to FLSA coverage." (Dkt. No. 87-1, at 3).

broadly by the courts."). The second prong can generally be proven by tax returns. *See Yupa v. Country Stone & Fence Corp.*, No. 14-cv-7384, 2017 WL 27957, at *4, 2017 U.S. Dist. LEXIS 361, at *11 (E.D.N.Y. Jan. 3, 2017).

Here, Defendants admit that employees of Liberty Gas and Liberty Pizza "handled, sold, and worked with goods or materials that had been moved in or produced for commerce" and that both businesses "had an annual gross volume of sales of not less than $500,000." (Dkt. No. 78-2, at ¶¶ 3–6; Dkt. No. 81-3, at ¶¶ 3–6; Dkt. No. 87-2, at 3). Additionally, tax returns from 2014 confirm that both Liberty Gas and Liberty Pizza have previously reported annual gross sales in excess of $500,000. (Dkt. No. 78-15, at 2; Dkt. No. 78-16, at 2). Therefore, the Court finds that no genuine issue of material fact exists, and Defendants Liberty Gas and Liberty Pizza are covered by the FLSA.

### B.    Turan is an Employer under the FLSA

The Secretary argues that Turan qualifies as an employer under the FLSA and is therefore individually liable for violations "because . . . he had operational control over both stores, including but not limited to control over the hiring and firing of employees, employee schedules, pay rates, and employment records." (Dkt. No. 88, at 3). Turan points to his deposition testimony that "there's no way . . . one person can manage two pizza places." (Dkt. No. 78-9, at 26; Dkt. No. 87-1, at 4). He argues, without citation to any caselaw, that "there is a genuine issue of material fact [regarding] who was the person in charge at the other establishment . . . opposite the time period Mr. Turan was in charge." (Dkt. No. 87-1, at 3).

The FLSA imposes liability on "any employer who violates [its] provisions." 29 U.S.C. § 216. The Act defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." § 203(d). The Supreme Court has recognized the "expansiveness" of this definition, *Falk v. Brennan*, 414 U.S. 190, 195 (1973), and counseled

courts to evaluate the "economic reality" of the specific employment relationship. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). "[E]mployment for FLSA purposes [i]s a flexible concept to be determined on a case-by-case basis.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)).

Given this breadth, the Court's task is to evaluate the "totality of the circumstances" surrounding the employment relationship. *Id.* The Court must determine "whether the individual possessed operational control over employees." *Tapia v. BLCH 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018). Operational control arises where "an individual defendant . . . possess[es] control over a company's actual 'operations' in a manner that relates to . . . employment." *Irizarry*, 722 F.3d at 109. The Second Circuit has articulated four factors relevant to this operational-control analysis: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Tapia*, 906 F.3d at 61 (quoting *Barfield*, 537 F.3d at 141).

Contrary to Defendants' argument, employer status under the FLSA requires neither constant physical presence nor "continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman v. RSR Sec. Servs. LTD.*, 172 F.3d 132, 139 (2d Cir. 1999). In *Herman*, the Second Circuit affirmed the district court's finding of liability where an employer had the authority to hire employees, "controlled the company financially" and merely "on occasion, supervised and controlled employees' work schedules and the conditions of employment." *Id.* at 140. Similarly, the Second

Circuit in *Irizarry* held a defendant liable under the FLSA where "he exercised influence in specific stores on multiple occasions." 722 F.3d at 113.

     *Irizarry* is instructive. There, the defendant was the "chairman, president, and CEO" and "[did] not report to anyone else" at his business. *Id.* at 111. He worked at the company's headquarters and "did not exercise managerial control in stores on the day-to-day level of a manager." *Id.* at 111–13. He visited his stores only one day a week, "staying about ten minutes in each one." *Id.* at 113. Although he "ha[d] the authority to hire and fire others," he "could not remember having fired anyone in five or six years." *Id.* at 114. Nevertheless, the Second Circuit found he qualified as an employer under the FLSA with respect to multiple, individual stores because of "his active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores." *Id.* at 117.

     That Turan qualifies as an employer here is clearer than in *Irizarry*. The undisputed facts indicate that throughout the entire time Turan worked for both Liberty Gas and Liberty Pizza, regardless of which location he visited more frequently, he had the authority to hire and fire employees, controlled employees' schedules, managed compensation, and oversaw recordkeeping. (Dkt. No. 78-9, at 25–26; Dkt. No. 81-3, ¶ 28). *See Irizarry*, 722 F.3d at 116 (finding defendant qualified as an employer even where there was "no evidence that he was responsible for the FLSA violations—or that he ever directly managed or otherwise interacted with the plaintiffs in this case").

     Indeed, while Turan worked primarily at Liberty Gas, he hired Jeffrey Fox to run Liberty Pizza. (Dkt. No. 78-9, at 25–26). Around the same time, he also hired at least two other Liberty Pizza employees, Danell Black and Hariz Husejnovic. (*Id.*). Even after moving to Liberty Pizza,

Turan was involved in the approval of hiring and firing decisions made at Liberty Gas. (*Id.* at 82–83). When, for example, Liberty Gas manager Hossein Rajabi wanted to hire a new cashier, he asked for Turan's approval, to which Turan responded, "Fine." (*Id.*). As in *Irizarry*, even if Turan did not directly hire or fire employees after leaving Liberty Gas, these facts show that he remained empowered to do so.

Turan played a similar role in scheduling. During his time at Liberty Gas, he either made the weekly schedule or instructed Victoriya Konochuk to do so. (Dkt. No. 78-9, at 13; Dkt. No. 81-3, ¶ 7; Dkt. No. 87-2, at 3). When employees had scheduling conflicts or needed time off, they would ask Turan directly for an accommodation. (Dkt. No. 78-9, at 66). Although no master schedule was posted at Liberty Gas, Turan would communicate employees' weekly hours to them. (*Id.* at 67). During this time, he also had authority to determine employees' hours at Liberty Gas. For instance, Turan assigned Rajabi additional hours at Liberty Pizza while both men worked primarily at Liberty Gas. (Dkt. No. 78-11, at 6). Additionally, he determined whether Konochuk worked at Liberty Gas or Liberty Pizza. (Dkt. No. 78-10, at 21). Even after moving to Liberty Pizza, Turan continued to set employees' schedules "most of the time." (Dkt. No. 78-11, at 15).

With regard to compensation, Turan set his own salary. (Dkt. No. 78-9, at 34). He also set the wages of managers Konochuk and Rajabi and other employees of Liberty Gas. (Dkt. No. 78-10, at 21; Dkt. No. 78-11, at 12, 17). Turan also took responsibility for the compensation of Liberty Pizza employees. (Dkt. No. 78-9, at 88). Turan also oversaw the keeping of employment records by instructing Konochuk to create weekly employment reports to be signed by each employee. (*Id.* at 89, 105). Additionally, he "collected time records and sent them to Defendants' payroll company for processing." (Dkt. No. 78-8, at 10).

13

To the extent Turan argues that he hired managers underneath him or could only physically work at one store at a time, such facts are "irrelevant." *Irizarry*, 722 F.3d at 116; *see also Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("The fact that [the employer] may have shared or delegated operational control to other . . . managers, or exercised that control infrequently, is of no consequence.").

Taken together, the undisputed facts demonstrate that Turan "was active in running" both Liberty Gas and Liberty Pizza. *Irizarry*, 722 F.3d at 116. "His decisions affected . . . [both] stores, and the personnel and products therein." *Id.* Accordingly, the Court finds that Defendants have failed to raise a genuine issue of material fact as to whether Turan is an employer under the FLSA, and the Secretary is entitled to summary judgment on that issue.

### C.    Liberty Gas and Liberty Pizza are Joint Employers

The Secretary next argues that Liberty Gas and Liberty Pizza are joint employers under the FLSA because they "had common ownership and management." (Dkt. No. 78-1, at 17). Joint employment arises where "employers are sufficiently associated with respect to the employment of the employee." 29 C.F.R. § 791.2(e).[6] Importantly, joint employment generally will be found when:

> (i) [t]here is an arrangement between [two employers] to share the employee's services; or (ii) [o]ne employer is acting directly or indirectly in the interest of the other employer in relation to the employee; or (iii) [t]hey share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."

§ 791.2(e)(2).

---

[6] The Secretary cited to the version of the FLSA that was in effect at the time his brief was submitted. (Dkt. No. 78-1, at 16–17). However, as of March 16, 2020, the joint employment section of the statute has been updated. *See* 29 C.F.R. § 791.2. There does not appear to be any relevant substantive difference in how the two versions apply here.

The first and third scenarios are particularly relevant here. First, Turan testified that he called employees from Liberty Pizza to work at Liberty Gas when he was short-staffed. (Dkt. No. 78-9, at 99–100). At least seven employees worked at both locations, either on a regular basis or in a more limited capacity. (*Id.* at 38, 42–43, 84, 99, 109, 112). To facilitate this sharing of employees, Turan coordinated with the managers of each store. (*Id.* at 95). Even where Turan himself did not coordinate these arrangements, the store managers were empowered to do so. (*Id.* at 85). These facts show that an informal arrangement existed between Liberty Gas and Liberty Pizza to interchange employees to fill gaps in the schedule. *See Murphy v. HeartShare Human Servs. of N.Y.*, 254 F. Supp. 3d 392, 401 (E.D.N.Y. 2017) (finding joint employment where employees worked at jointly owned school and residential facility during the same work week).

Similarly, Liberty Gas and Liberty Pizza were under Turan's common control. While Turan was the "person in charge" at Liberty Gas, he was also the owner and sole shareholder of Liberty Pizza. (*Id.* at 12, 27, 35–36). As described above, Turan created employee schedules, set compensation, and oversaw payroll at both stores. *See supra* Section IV.B. Additionally, Turan used the same payroll and bookkeeping company to manage compensation at both stores. (*Id.* at 102–03). These facts, along with his hiring authority at both stores and his financial management of both companies, indicate that Liberty Gas and Liberty Pizza were under common control. *See Teri v. Spinelli*, 980 F. Supp. 2d 366, 375–76 (E.D.N.Y. 2013) (finding joint employment where defendants shared employees, a bookkeeper, and ownership of the company premises).

Defendants argue that a genuine issue of material fact exists as to whether joint employment exists because "two WHD Investigators came to two different conclusions [about joint employment] in investigations that overlapped in time." (Dkt. No. 87-1, at 5). This argument is unpersuasive. Two separate investigations occurred in 2015 and 2016, respectively.

15

(Dkt. No. 78-3, ¶¶ 6, 8). The documents submitted during the first investigation "did not, on their face, show that employees regularly worked over forty hours." (*Id.* ¶ 7). During the second investigation, WHD initially reached the same conclusion, only later changing its conclusion based on "additional information gathered during the investigation." (*Id.* ¶ 8). Initially, "Liberty Gas . . . failed to provide the daily time records, such as time cards or sign-in/sign-out sheets, that it used to maintain the hours worked by employees." (*Id.*). Once additional information surfaced, WHD changed its conclusion. (*Id.*). Furthermore, Defendants "provided payroll records for most weeks" from May of 2014 through November of 2017 during this litigation. (*Id.* ¶ 11). Indeed, WHD Investigator James Hastings, who oversaw the second investigation, relied on these additional records in reaching his conclusion that "at least three employees worked over forty hours in the same workweek at both locations." (*Id.* ¶ 12). Defendants cannot rely on a discrepancy that they themselves created during the first investigation by initially failing to produce documents because the undisputed facts in this record establish that the Liberty Pizza and Liberty Gas had common management and supervision of employees and are therefore are joint employers as a matter of law. Accordingly, the Court finds that the Secretary is entitled to summary judgment on this issue.

### D.    Overtime Violations

The Secretary asserts that based on Defendants own payroll records, they violated the FLSA's overtime provisions with respect to three employees: Jeffrey Fox, Hossein Rajabi, and Christopher Williams.[7] (Dkt. No. 78-1, at 19–21). According to the Secretary, "Defendants paid

---

[7] On February 19, 2019, the Court ordered Defendants to produce additional payroll records from Liberty Gas and Liberty Pizza. (Dkt. No. 64). According to the Secretary, "Defendants have neither produced Liberty Pizza Jamesville payroll records after October 15, 2017, nor have they produced Liberty Gas payroll records after November 19, 2017." (Dkt. No. 78-1, at 20 n.4). Additionally, "Defendant Turan has also failed to provide an affidavit, as ordered by the Court, stating whether he ever had possession, custody, or control of such records, explaining why he no longer possesses or has access to them, and identifying who else may have current possession,

employees who worked at both locations with separate checks without combining their hours, thereby failing to pay them overtime." (*Id.* at 19). Defendants do not respond to this point, presumably because, as explained above, Defendants dispute their joint-employer status.

The FLSA's overtime provisions require employers to pay employees for hours worked in excess of 40 per week "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). This rule is commonly known as the "time-and-a-half method" of overtime calculation and sets the applicable overtime wage at 150 percent of the regular wage. *See Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121, 127 (S.D.N.Y. 2018). Where, as here, multiple employers act as joint employers, each is "jointly and severally liable . . . for compliance with all the applicable provisions of the Act, including overtime provisions, for all of the hours worked by the employee in that workweek." 29 C.F.R. § 791.2(f). For instance, the Second Circuit in *Barfield* affirmed the district court's finding that a nurse who worked more than 40 hours per week total for three separate staffing agencies was entitled to overtime under the FLSA because of the joint-employer relationship. 537 F.3d at 153.

Having found above that Defendants are joint employers, the Court can resolve the question of Defendants' liability for certain overtime violations as a matter of simple math, using undisputed payroll records.[8] *See Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 661 (S.D.N.Y. 2015) (finding overtime violations and calculating compensatory damages at summary judgment

---

custody, or control of these documents." (*Id.*). Accordingly, the Secretary has reserved his right to seek further damages for unpaid overtime compensation in the event additional payroll records become available. (*Id.*).

[8] The Secretary submitted a series of spreadsheets that reflect the relevant payroll records from 2016 and 2017. (*See* Dkt. No. 78-4, at 3–7). These spreadsheets were created and sworn to by WHD Investigator Hastings "based solely on Defendants' payroll records." (Dkt. No. 78-3, ¶ 17). Defendants do not dispute the accuracy of the Secretary's submission or challenge its reliability. (*See* Dkt. No. 81-3, ¶¶ 65–71; Dkt. No. 87-2, at 3). Accordingly, the Court will rely on this evidence of Defendants' payroll records. *Cf.*, *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 624 (S.D.N.Y. 1998) ("In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.").

stage based on an undisputed payroll spreadsheet). When employees' weekly hours at both locations are added together, the payroll records clearly show that, in 2016 and 2017, Jeffrey Fox, Hossein Rajabi, and Christopher Williams routinely worked more than forty hours per week, and sometimes as many as seventy hours per week. (Dkt. No. 78-4, at 3–7). Furthermore, the records, as well as Turan's testimony, confirm that these employees were paid their regular wage for all hours worked, in separate checks from the two locations. (*Id.*; Dkt. No. 78-9, at 98; Dkt. No. 78-21, at 5; Dkt. No. 78-22, at 5). Thus, these employees were not paid any overtime, despite working as many as 70 hours in one week. (Dkt. No. 78-9, at 98). Based on this unrebutted evidence, the Court finds that Defendants are liable for overtime violations with respect to employees Fox, Rajabi, and Williams.

### E.      Minimum-Wage Violation

The Secretary next contends that Defendants "fail[ed] to pay any wages" to employee Zarif Arif, who worked for one day "as a delivery driver for Liberty Gas in or around February 2016." (Dkt. No. 78-1, at 22). Defendants acknowledge that, "while doing a delivery," Arif "'was beat up,' went to the hospital, and did not return to work after that day." (Dkt. No. 87-1, at 5). However, they argue that the Court is precluded from resolving the matter of Arif's compensation because "[t]he record isn't entirely clear on what happened." (*Id.*). In other words, Defendants argue, without citation to any caselaw, that there is a genuine issue of material fact as to Arif's compensation because his situation "was a unique one." (*Id.*).

The FLSA requires employers to pay their employees a wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(C); *see Vlad-Berindan v. N.Y.C. Metro. Transp. Auth.*, 779 F. App'x 774, 777 (2d Cir. 2019) ("The FLSA requires that employers pay their 'employees' a minimum wage." (citing 29 U.S.C. § 206)). The failure to pay any wage to an employee generally constitutes a minimum-wage violation under this provision. *See Carrasco-Flores v.*

*Comprehensive Health Care and Rehab. Servs., LLC*, No. 12-cv-5737, 2014 WL 4954629, at *4, 2014 U.S. Dist. LEXIS 141455, at *7 (E.D.N.Y. Sept. 15, 2014) (finding minimum-wage violation where employee "testified credibly" that she was not paid for her work).

Here, Turan testified that Arif worked for Liberty Gas one day for approximately six hours, from 2 p.m. until around 8 p.m. (Dkt. No. 78-9, at 124). Turan further testified that Arif "did not get paid for that day." (*Id.* at 125). Furthermore, all Defendants have admitted that Arif "was an employee of Liberty Gas in or around February 2016" and "was not paid for one day of work." (Dkt. No. 81-3, at ¶¶ 72–73; Dkt. No. 87-2, at 3). Although the circumstances may have been unusual, the admitted facts show that Defendants failed to pay Arif any wage for his work. To the extent there is a question of fact surrounding the robbery incident, Defendants have not shown such a question to be material. By Turan's own testimony, Arif arrived at approximately 2 p.m., then "took a couple of deliveries at like 5 or 6 [p.m.]." (Dkt. No. 78-9, at 121). Indeed, Arif was on a delivery for Liberty Gas when he ran into trouble. (*Id.* at 124). Accordingly, the Court finds that Defendants are liable for a minimum-wage violation with regard to employee Zarif Arif. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes.").

### F.   Damages

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of [the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be, and an additional equal amount of liquidated damages." 29 U.S.C. § 216(b). The Secretary seeks a finding of overtime damages with respect to Jeffrey Fox, Hossein Rajabi, and Christopher Williams; minimum-wage damages with respect to Zarif Arif; and liquidated damages with respect to all violations. (Dkt. No. 78-1, at 19–24).

### 1.     Overtime Damages

As discussed above, employees are entitled to 150 percent of their regular rate for each hour worked during a week in excess of forty. *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012). Where an employee has been paid his or her regular rate for overtime hours, the appropriate measure of overtime damages is 50 percent of the regular rate. *See id.* at 90 (calculating overtime damages at 50 percent of regular rate, per hour worked in excess of 40). According to the undisputed exhibits submitted by the Secretary, Jeffrey Fox worked a total of 500 overtime hours between the week ending September 4, 2016, and the week ending October 15, 2017, at a regular rate of $10 per hour.[9] (Dkt. No. 78-4, at 3–5). Thus, his unpaid overtime compensation amounts to $5 per overtime hour—$2,500 total. Similarly, Hossein Rajabi worked a total of 311 overtime hours between the week ending August 7, 2016, and the week ending October 16, 2016, at a regular rate of $13 per hour. (*Id.* at 6). Using that sum and an unpaid overtime rate of $6.50 per hour, Rajabi's unpaid overtime compensation comes to $2,021.50. Finally, Christopher Williams worked a total of 118.5 overtime hours between the week ending March 26, 2017, and the week ending July 23, 2017, at a regular rate of $10 per hour. (*Id.* at 7). Thus, his unpaid overtime compensation amounts to $5 per hour, for a total of $592.50. The table below summarizes the Court's findings with respect to overtime damages:

---

[9] This total represents the sum of hours reported by the Secretary in Column E of the table. As testified to by WHD Investigator Hastings,

> Column E, 'Unpaid Overtime Hours Due,' is the amount of hours that Defendants failed to pay any overtime compensation to the employee based on their [undisputed] payroll records. For most weeks, this was calculated by subtracting 40 hours from Column D ['Total Hours on Payroll'].

> However, for a few workweeks (weeks ending May 14, 2017; September 3, 2017; September 10, 2017; and October 15, 2017) where the hours exceeded 40 at Liberty Gas (Column C) and the Liberty Gas payroll showed that Mr. Fox was paid time and one half for the overtime hours at that one location, then the unpaid overtime hours due (Column E) was computed by subtracting the number of hours at Liberty Gas (Column C) from Column D.

(Dkt. No. 78-3, at ¶ 17.)

| Employee | Number of Overtime Hours | Regular Rate (per hour) | Unpaid Overtime Rate (per hour) | Total Unpaid Overtime Compensation |
|---|---|---|---|---|
| Jeffrey Fox | 500 | $10 | $5 | $2,500.00 |
| Hossein Rajabi | 311 | $13 | $6.50 | $2,021.50 |
| Christopher Williams | 118.5 | $10 | $5 | $592.50 |

Accordingly, the Court finds that Defendants are liable for overtime damages in the amount of $2,500.00 with respect to Jeffrey Fox, $2,021.50 with respect to Hossein Rajabi, and $592.50 with respect to Christopher Williams.

### 2.    Minimum Wage Damages

The FLSA requires employers to pay their employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1). The Secretary asks this Court to assess Defendants' minimum-wage damages with respect to Zarif Arif based on this federal rate.[10] (*See* Dkt. No. 78-1, at 22; Dkt. No. 78-4, at 2). Having found liability above, the Court must determine the number of unpaid hours that Arif worked in order to calculate the appropriate measure of damages. The Secretary argues that Arif was unpaid "for approximately seven hours of work." (Dkt. No. 78-1, at 22). Defendants do not dispute this claim, which is based on Turan's own testimony that Arif worked from around 2 p.m. until the robbery incident occurred at approximately 8 p.m., as well as Hossein Rajabi's testimony that Arif worked "six to eight hours." (Dkt. No. 78-9, at 124; Dkt. No. 78-11, at 19). In the absence of documentation, employee recollections may suffice as

---

[10] Courts in this Circuit have consistently held that the federal minimum wage does not preempt the state minimum wage, and therefore, an employee may recover under the higher minimum wage set by New York law. *See Gunawan*, 897 F. Supp. 2d at 89 (citing *Rodriguez v. Queens Convenience Deli Corp*., No. 09-cv-1089, 2011 WL 4962397, at *2, 2011 U.S. Dist. LEXIS 120478, at *6 (E.D.N.Y. Oct. 18, 2011) and *Wickasono v. XYZ 48 Corp*., 2011 WL 2022644, at *3, 2011 U.S. Dist. LEXIS 55771, at *9 (S.D.N.Y. May 2, 2011)). However, the present case arises only under the FLSA, and therefore, the Court does not consider the applicability of New York Labor Law to this dispute. See *Weitzen v. Kearns*, 262 F. Supp. 931, 932 (S.D.N.Y. 1966) (refusing to apply state law where the plaintiff "asserted no state claim in this court").

evidence of hours worked for the purposes of an FLSA claim. *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008). Here, the Secretary's estimate is based on comparable estimates given by Turan and Liberty Gas manager Hossein Rajabi, who recruited Arif for the job. (Dkt. No. 78-9, at 124; Dkt. No. 78-11, at 19). Moreover, Defendants have not presented any evidence to dispute the Secretary's estimate. For these reasons, the Court will calculate damages based on seven unpaid hours of work. Thus, the Court finds Defendants liable for Arif's unpaid compensation in the amount of $50.75.

### 3. Liquidated Damages

In addition to compensatory damages, the FLSA provides for payment of "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). In these cases, "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman*, 172 F.3d at 142 (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583–84 (1942)). "Courts have discretion to deny an award of liquidated damages where the employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that [their conduct] did not violate the FLSA." *Id.* To avoid liquidated damages on these grounds, "the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* The Second Circuit has described the employer's burden to establish good faith as "a difficult one, with double damages being the norm and single damages the exception." *Id.* (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)); *see also Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 411 (E.D.N.Y. 2017) ("[A]n award of liquidated damages is typically presumed under the FLSA.").

Defendants argue that liquidated damages are not appropriate in this case because Turan "actively contacted an attorney and his payroll company to discuss the matter of overtime pay for employees who worked at both Liberty Pizza and Liberty Gas," thereby demonstrating good faith.[11] (Dkt. No. 81-2, at 2). The Secretary contends—and the Court agrees—that "[t]he full context of the facts belie this argument." (Dkt. No. 88, at 4).

Specifically, Turan admitted to having knowledge of the minimum wage and overtime requirements since "2004 or 2005." (Dkt. No. 78-9, at 119). Turan was again advised of these requirements by a bookkeeper in 2010, around the time Defendants began operating Liberty Gas. (*Id.* at 120–21). Despite this knowledge, Turan admitted that he never explored these issues further until around 2016, after the WHD investigations had begun. (*Id.* at 45). At that time, Turan briefly consulted two acquaintances, an attorney and a bookkeeper, both of whom advised Turan that he should not have to pay overtime to his employees working at "two separate locations." (*Id.* at 45–47). He described his conversation with the attorney as "a maybe 45-second phone conversation, maybe a minute." (*Id.* at 47). Eventually, he consulted his payroll representative, who advised him that he "might be [required] to pay overtime." (*Id.* at 49). Turan thought the payroll company did not know the rules. (Dkt. No. 78-2, ¶ 79; Dkt. No. 87-2, at 3; Dkt. No. 81-3, at 19-20). It is undisputed that Defendants did not seek out actual legal advice and continued to not pay overtime to employees who worked over forty hours at both locations throughout 2016 and 2017, even after the Secretary's complaint was filed. (*Id.*).

Under these undisputed facts Defendants have failed to meet their heavy burden of demonstrating good faith. First, the "cursory nature" of Turan's consultation with an attorney

---

[11] Defendants Turan and Liberty Gas additionally argue that their FLSA violations were not "willful." (Dkt. No. 87-1, at 6). This argument mischaracterizes the issue, as even an unintentional violation of the FLSA may give rise to liquidated damages. *See Reich*, 121 F.3d at 71 ("That [Defendant] did not purposefully violate the FLSA is not sufficient to establish that it acted in good faith.").

makes the good-faith claim "doubt[ful]." *Howard v. Port Auth. of N.Y., N.J.*, 684 F. Supp. 2d 409, 416 (S.D.N.Y. 2010); *see also Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017) (finding employer's "sparse" evidence of conversation with accountant insufficient to meet the high burden of good faith). Moreover, Turan admitted that he made no attempt to investigate Defendants' overtime obligations with respect to employees who worked at both locations until after the WHD investigations began, which further undermines Defendants' good-faith defense. *See Brock v. Wilamowsky*, 639 F. Supp. 1166, 1172 (S.D.N.Y. 1986) (ordering employer to pay liquidated damages where employer "sought neither an interpretation from the Labor Department nor advice from counsel, until after the Labor Department's investigation"), *rev'd on other grounds*, 833 F.2d 11 (2d Cir. 1987); *see also Brock v. Wackenhut Corp.*, 662 F. Supp. 1482, 1488 (S.D.N.Y. 1987) (same). Finally, even if Turan's later conversation with the payroll company could constitute such an active step, the law requires more, namely that Defendants "then act to comply with [their obligations under the FLSA]." *Herman*, 172 F.3d at 142.

Regarding the minimum-wage violation, Defendants have not submitted any evidence of good faith. Defendants Turan and Liberty Gas merely argue that "[i]t was a unique situation." (Dkt. No. 87-1, at 6). Thus, because Turan admitted knowledge of the minimum-wage requirement and has not presented evidence of good faith, the defense fails.

For the foregoing reasons, there is no genuine issue of material fact regarding Defendant's failure to meet their high burden of proving good faith. The Court therefore finds liquidated damages—in the amount of $2,500 with respect to Jeffrey Fox; $2,021.50 with respect to Hossein Rajabi; $592.50 with respect to Christopher Williams; and $50.75 with respect to Zarif Arif—appropriate in this case.

V.      **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that the Clerk of the Court is directed to substitute the current Secretary of Labor, Eugene Scalia, as the Plaintiff in this action, in accord with Fed. R. Civ. P. 25(d); and it is further

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 78) is **GRANTED** in its entirety, and the Court specifically finds that: (1) Defendants Liberty Gas and Liberty Pizza are covered by the FLSA; (2) Defendant Huseyin Turan is an employer of the employees of Liberty Gas and Liberty Pizza; (3) Defendants Liberty Gas and Liberty Pizza are joint employers under the FLSA; (4) Defendants must pay back wages for unpaid overtime in the amount of $5,114 plus an equal amount in liquidated damages for employees Jeffrey Fox, Hossein Rajabi, and Christopher Williams, for a total of $10,228; and (5) Defendants must pay back wages for unpaid minimum wage in the amount of $50.75, plus an equal amount in liquidated damages for employee Zarif Arif, for a total of $101.50; and it is further

**ORDERED** that trial of the remaining issues will proceed on July 6, 2020, in accord with the Court's Trial Order (Dkt. No. 90).

**IT IS SO ORDERED.**

Dated:  March 16, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

25